1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES,                          No.  2:15-CR-00002 KJM

12             Plaintiff,

13        v.                                 ORDER

14   JASON LABORIN,

15             Defendant.

16

17              On April 22, 2015, the parties appeared for hearing on defendant Jason Laborin's

18   motion to suppress evidence.  Sherry Haus, Assistant United States Attorney, appeared for the

19   government; Jesse Ortiz appeared for defendant, who was present in custody.  For the reasons set

20   forth below, the court DENIES defendant's motion.

21   I.        BACKGROUND

22              Defendant is charged with possession of a firearm in violation of 18 U.S.C.

23   § 922(g)(1), with a criminal forfeiture allegation based on 18 U.S.C. § 924(d)(1) and 28 U.S.C.

24   § 2461(c).  Indictment, ECF No. 7.  The charges stem from a federal supervised release

25   compliance search conducted at defendant's residence on July 22, 2013.  King Report at 3, ECF

26   No. 26.

27              Defendant began a term of supervised release in connection with a previous

28   conviction on April 27, 2012.  Lutke Decl. ¶ 4, ECF No. 16-1.  The conditions of his supervised

1

1   release included that defendant "shall not possess a firearm, destructive device, or any other

2   weapon," "shall permit a probation officer to visit him [] at any time at home or elsewhere," and

3   "shall submit to the search of his person, property, home, and vehicle by a United States

4   Probation Officer, or any other authorized person under the immediate and personal supervision

5   of the probation officer, based upon reasonable suspicion, without a search warrant." *United*

6   *States v. Laborin*, No. 2:06-CR-00193-DLJ, ECF No. 32 at 3.

7          Miranda Lutke, defendant's probation officer, was contacted by Special Agent

8   David Sieber of the Federal Bureau of Investigation (FBI) on July 19, 2013.  Lutke Decl. ¶ 7; *see*

9   *also* Sieber Decl., ECF No. 16-2 at 3.  Sieber informed Officer Lutke that the FBI had a "credible

10  source" stating defendant was "dealing large amounts of methamphetamine and was keeping it at

11  his residence," and that defendant had ties to the Nuestra Familia and Norteño gangs.  *Id.*  Based

12  on this information and Officer Lutke's previous knowledge of defendant's affiliation with

13  "Varrio Gardon Sacra, a Norteño gang set," *id.* ¶ 8, she investigated the tip.  Specifically, she

14  contacted the Bureau of Prisons and submitted a data inquiry to its database system to determine

15  whether defendant had been in contact with any inmates.  *Id.* ¶ 9(b).  She discovered defendant

16  had been in extensive contact with an inmate who was a known gang member, and had wired the

17  inmate $600 in the previous year.  *Id.* ¶ 9(c).  Based on this information, and the terms of

18  defendant's supervised release, Officer Lutke sought approval to search defendant's residence for

19  evidence of violations of supervised release.  *Id.* ¶ 11.

20         The search itself is described in the narrative summaries of Officer Justin King and

21  Agent Christopher Mouzis, at the time assigned to the FBI's Safe Streets Task Force.  King

22  Report, ECF No. 26; Mouzis Report, ECF No. 16-4.  The Sacramento Sherriff's Department, the

23  Safe Streets Task Force and the United States Probation Office conducted the search on July 22,

24  2013.  King Report at 4.  The search team attempted unsuccessfully to contact defendant at about

25  8:55 a.m., at the address he reported as his residence in his monthly supervision report.  Lutke

26  Decl. ¶ 11.  Search team members were able to reach defendant by telephone and they requested

27  he come to the residence.  *Id.*  At approximately 9:30 a.m., defendant was observed walking

28  toward the residence, and he was detained for the search in accordance with the officers' standard

1    practice for safety purposes, handcuffed in a police vehicle.  Sieber Decl. ¶ 14; *see also* Mouzis

2    Decl. ¶ 5.  Defendant told officers he did not have keys to the residence; ultimately officers

3    entered through an open window.  King Report at 4.  During the search, defendant's mother

4    Maggie Laborin, who also lived at the residence, arrived.  *Id*.  Officers asked her if she knew of

5    any weapons or contraband in the house, and she told officers she was holding a gun for someone.

6    *Id*.  She directed officers to a purse in her bedroom closet, which contained a canvas pouch with a

7    black pistol inside.  *Id*.  Also in the handbag was a firearm suppressor.  *Id*.  Maggie Laborin was

8    questioned, and she told officers the gun belonged to her son, the defendant.  *Id*. at 5.  Upon the

9    discovery of the gun, at approximately 10:22 a.m., defendant was read his Miranda rights.

10   Mouzis Report, ECF No. 16-4.  "It was about this time" when defendant saw his mother being

11   detained by officers; he became "upset," and asked officers to let his mother go, stating that the

12   gun was his.  *Id.; see also* King Report at 5.

13   II.      MOTION TO SUPPRESS

14           A.      Search of the Residence

15           Defendant contends the warrantless search was without reasonable suspicion or

16   probable cause in violation of the Fourth Amendment.  Def.'s Mot. at 6.  Accordingly, he says,

17   the evidence obtained during the search and any statements by him or his mother should be

18   suppressed.  *Id*.  The government argues suppression is improper because reasonable suspicion

19   justified the search.  Opp'n at 1.

20           Because defendant was on supervised release, he has a diminished expectation of

21   privacy.  *United States v. Lofton*, 244 F. App'x 113, 114 (9th Cir. 2007) (citing *United States v.*

22   *Knights*, 534 U.S. 112, 122 (2001)).  As noted above, the terms of defendant's supervised release

23   expressly allow for a warrantless search of himself, his property, or his home if officers have

24   "reasonable suspicion" that defendant is engaged in criminal activity.  In order to determine

25   whether reasonable suspicion exists, a court must consider the totality of the circumstances and

26   the probability, rather than the certainty, of criminal conduct.  *United States v. Cortez*, 449 U.S.

27   411, 417 (1981); *see also United States v. Sokolow*, 490 U.S. 1, 8–10 (1989) (reasonable

28   suspicion depends on the "totality of the circumstances—the whole picture"; several facts may,

1    when considered together, add up to reasonable suspicion).  The officer must be aware of

2    "specific, articulable facts which, when considered with objective and reasonable inferences,

3    form a basis for particularized suspicion."  *United States v. Montero–Camargo*, 208 F.3d 1122,

4    1129 (9th Cir. 2000) (quotations omitted).  Tips from informants, combined with a defendant's

5    previously known gang affiliation, can support reasonable suspicion.  *United States v. Asprilla*,

6    No. CR 10-0348, 2011 WL 845919, at *4 (N.D. Cal. Mar. 8, 2011), *aff'd*, 473 F. App'x 570 (9th

7    Cir. 2012).  Reasonable suspicion is determined from the perspective of an experienced law

8    enforcement officer under the totality of the circumstances.  *See United States v. Alvarez*, 899

9    F.2d 833, 837 (9th Cir. 1990).

10           Here, the reliability of the tip from a credible source was bolstered by defendant's

11   previously-known gang activity and his confirmed contemporaneous communications with an

12   inmate affiliated with a gang.  Lutke Decl. at 3.  The officers had reasonable suspicion justifying

13   the search of defendant's residence.

14           B.      Defendant's Detention

15           Defendant argues his detention during the search, while he was handcuffed, placed

16   in a police vehicle and questioned by Sgt. Mouzis, amounted to an arrest without probable cause.

17   Even if he was not arrested, defendant argues his detention violated the Fourth Amendment.

18   Def.'s Mot. at 9, 11.

19           "[O]fficers may constitutionally detain the occupants of a home during a . . .

20   probation compliance search," *Sanchez v. Canales*, 574 F.3d 1169, 1173 (9th Cir. 2009), as long

21   as they have probable cause to believe that the probationer resides at the address, *Motley v. Parks*,

22   432 F.3d 1072, 1079 (9th Cir. 2005) (en banc).  The detention of occupants in handcuffs for up to

23   two to three hours, when justified by law enforcement's safety interests, has been held

24   constitutionally reasonable.  *See Muehler v. Mena*, 544 U.S. 93, 100 (2005).

25           A case from a sister court, *Halbert v. Cnty. of San Diego*, No. CIV 07CV1607-

26   L(WVG), 2010 WL 1292163, at *7 (S.D. Cal. Mar. 30, 2010), is useful for comparison purposes.

27   In *Halbert*, defendant challenged his handcuffed detention and interrogation, which lasted

28   between one and two hours, as constitutionally unreasonable under the Fourth Amendment.  The

4

1    court, relying on *Muehler*, found the search and detention reasonable because there was no

2    evidence the questioning prolonged detention, or that the defendant was held longer than

3    necessary to conduct the search.  2010 WL 1292163, at *7.

4            Here, defendant was detained for slightly more than fifty minutes during officers'

5    search of his residence.  The detention was consistent with standard practice to protect officer

6    safety where, as here, defendant was suspected of gang affiliation and possession of a firearm.

7    Upon identification of a firearm in the residence, defendant was read his rights.  Within a very

8    short time, upon seeing his mother being detained, defendant admitted the firearm was his,

9    establishing probable cause for charging him with a violation of his supervised release terms.

10   Given these circumstances, the officers' questioning did not prolong the detention.  No evidence

11   supports a finding that he was held longer than necessary to conduct the search and to question

12   him.

13           Defendant's detention during the search did not violate the Fourth Amendment

14       C.     Challenge to Maggie Laborin's Statements

15           Defendant also moved to suppress all statements made by Maggie Laborin,

16   arguing they stemmed from an unconstitutional search.  At hearing, defendant conceded he does

17   not have standing to challenge the method by which Ms. Laborin's statements were obtained.

18   The court deems this aspect of defendant's motion withdrawn.

19   III.   CONCLUSION

20           Defendant's motion to suppress on Fourth Amendment grounds is DENIED.

21           IT IS SO ORDERED.

22   DATED:  May 22, 2015.

23

24   _____

25   UNITED STATES DISTRICT JUDGE

26

27

28

5