UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:15-cr-00002-KJM |
| Plaintiffs, | |
| v. | ORDER |
| JASON LABORIN, | |
| Defendant. | |

Defendant moves pro se and on an emergency basis for compassionate release and a reduction of his sentence to time served.  18 U.S.C. § 3582(c)(1)(A)(i).  He alleges health risks place him at greater risk of severe illness or death and conditions at his BOP facility increase his risk of exposure during this coronavirus pandemic ("COVID-19").  Having reviewed the parties' briefing, the court finds compelling reasons exist for defendant's release and GRANTS defendant's motion.

I.     BACKGROUND

   A.     COVID-19 Generally

It cannot be disputed that "[d]ue to the novel coronavirus pandemic, we are in extraordinary times." *United States v. Daniels*, No. 19-cr-00709, 2020 WL 1815c42, at *2 (N.D. Cal. Apr. 9, 2020) (internal quotation marks and citation omitted).  The global crisis has reached

levels requiring emergency response, including at the federal level in the United States. *See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020); *see also* California Executive Order N-75-20 (September 2, 2020).[1] In response to the crisis, earlier this year Attorney General William Barr directed the BOP to make individualized determinations balancing the vulnerability of inmates and public safety in the course of maximizing release of inmates to home confinement. *See* Mem. from U.S. Att'y Gen. William Barr to Director of Bureau of Prisons (April 3, 2020) (second memorandum supplementing original after passage of federal CARES Act).[2]

As of October 1, 2020, the Federal Bureau of Prisons ("BOP") reported that there were currently 1,813 inmates and 733 BOP staff with confirmed positive tests, 13,192 inmates and 933 staff that have recovered, and 124 inmates and 2 BOP staff member who have died from the disease.[3] Comparing the current numbers to the 1,349 federal inmates and 163 staff diagnosed with the virus as of June 23, 2020 suggests, as the numbers have reflected for some time, that this problem is expanding. *See United States v. Bradley*, No. 2:14-cr-00293, 2020 WL 3802794 (E.D. Cal. July 7, 2020).

      B.      <u>Procedural History</u>

Defendant Jason Laborin is serving a combined 104-month sentence at Federal Corrections Institution Schuylkill ("FCI Schuylkill") in Pennsylvania. Mot. for Reduction in Sentence ("Mot."), ECF No. 76 at 1; *see also* Opp'n to Def.'s Mot. for Compassionate Release ("Opp'n"), ECF No. 79 at 1–2. Specifically, he is serving sentences on two charges: (1) 92 months on the felon in possession of a firearm charge in violation of 18 U.S.C. § 922(g), and (2) 12 months for violation of the terms of supervised release imposed for a prior conviction as a felon in possession of a firearm. Opp'n at 2; ECF No. 1 at 4; Sentencing Mins. Order, ECF No.

---

[1] https://www.gov.ca.gov/wp-content/uploads/2020/08/8.24.20-EO-N-75-20-COVID-19-text.pdf

[2] https://www.justice.gov/file/1266661/download.

[3] The court takes judicial notice of the BOP coronavirus update. *See* https://www.bop.gov/coronavirus/# (accessed on October 1, 2020)

60. Defendant's current projected release date is March 15, 2022, assuming his good conduct while incarcerated.[4]  Opp'n, Ex. 1 at 2.  For the substantive felon in possession of a firearm charge, the court also sentenced defendant to a supervised release term of 36 months after he completes the custodial sentence.  Sentencing Mins. Order.

On July 6, 2020, defendant filed this motion for reduction of sentence.  Mot. at 1. The government opposes this motion, *see* Opp'n, ECF 79, and requests to seal medical records submitted with its motion, ECF No. 79 Ex. 2.  Defendant filed a reply on August 13, 2020.

II.     LEGAL STANDARD

Defendant requests a reduction of his sentence based on the limited authorization extended to courts by 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act.[5]  The statute allows for a motion for modification by the Director of the BOP or by defendant "after the defendant has fully exhausted all administrative rights to appeal[.]"  18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Exhaustion requires that "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on their behalf or the lapse of 30 days from receipt of such a request by the warden of the defendant's facility."  *Id.*

---

[4] There is no information in the record before the court to allow it to know if defendants will qualify for good behavior credits or, if so, the number of days by which his sentence would be reduced.

[5] 18 U.S.C. § 3582(c)(1)(A)(i) provides as follows:

> (A)     the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>  (i)     extraordinary and compelling reasons warrant such a reduction. . . .

3

The court applies a two-step process in determining whether a sentence modification or compassionate release is appropriate. First, the court considers the 18 U.S.C. § 3553(a) factors as they would apply at the time of filing. 18 U.S.C. § 3582(c)(1)(A). Second, the court must find "extraordinary and compelling reasons warrant such a reduction." *Id.*

Any reduction under the statute must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The final amendment to the Sentencing Commissions policy statement regarding "extraordinary and compelling reasons" was made on November 1, 2018, *see* U.S.S.G. § 1B1.13, prior to passage of the First Step Act. As referenced above, the First Step Act amended § 3582 to allow defendants to file compassionate release motions directly with district courts. A number of district courts nationwide have determined that, as a result, the policy statement provision "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019), because the statement has not been amended to reflect that both defendants and the BOP may move for compassionate release. *See United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1" (citations omitted)).

As this court previously has noted, many courts in this circuit have nonetheless "turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States v. Esparza*, No. 1:07-CR-00294, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, No. 2:18-CR-0232, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that

warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-35334 (April 13, 2020).  However, there is also a growing contingent of cases in which the presiding judge has concluded the guidelines are no longer limiting, and the court has discretion to define what constitutes an "extraordinary and compelling" reason.  *See, e.g.*, *United States v. Rodriguez*, No. 17-cr-00021, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases finding U.S.S.G. § 1B1.13 is no longer limiting but considering the policy statement as guidance).

In resolving the instant motion, this court continues to consider the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context.  *See Bradley*, 2020 WL 3802794, at *3; *see also United States v. Johnson*, 2:15-cr-00003, 2020 WL 2307306, at *3 (E.D. Cal. May 5, 2020).  The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community."  *United States v. Numann*, No. 3:16-cr-00025m 2020 WL 1977117, at *2 (D. Alaska April 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

III.   DISCUSSION

    A.   Exhaustion

Defendant claims he submitted a request to the warden at FCI Schuylkill to file a motion on his behalf on April 18, 2020.  Mot. at 2.  He attaches to the instant motion the response from the warden dated May 11, 2020, rejecting his request, confirming the warden received defendant's request on April 18, 2020.  Mot. at 9.

1    "Exhaustion occurs when the BOP denies a defendant's application or lets thirty
2  days pass without responding to it." *United States v. Mondaca*, No. 89-cr-0655, 2020 WL
3  1029024, at *2 (S.D. Cal. March 3, 2020) (quoting *Brown v. United States*, 411 F. Supp. 3d 446,
4  452 (S.D. Iowa 2019)); 18 U.S.C. § 3582(c)(1)(A).
5    Here, the warden denied defendant's application, the government does not argue
6  defendant has failed to exhaust administrative remedies, and the 30-day period without question
7  has elapsed. *See* Mot. at 1–2, 9–10 (with defendant's submission on April 18, and receipt of
8  response on May 11, he made his filing in this court 79 days after filing and 56 days after
9  response). Exhaustion is satisfied and the court turns to the merits.
10       B.    Extraordinary and Compelling Reasons
11    During the coronavirus pandemic, this court considers the suitability of the
12  particular circumstances of the defendant's confinement in providing protection from infection in
13  light of defendant's specific health risks. *See Bradley*, 2020 WL 3802794, at *4–5; *see also*
14  *Johnson*, 2020 WL 2307306, at *4–5. Defendant argues he has two health conditions, obesity and
15  asthma, that place him at increased risk if he contracts the coronavirus. Mot. at 3. The
16  government has submitted defendant's medical records, which confirm he is severely obese with
17  a Body Mass Index (BMI) of approximately 38.[6] Mot. at 3; Medical Records, ECF 79 Ex. 2 at 11
18  (defendant is between 5'8" and 5'9" and weighs 250 pounds). The government asserts there is no
19  record of defendant's asthma, but concedes defendant's obesity "makes him eligible for
20  compassionate release." Opp'n at 6–7.
21    Courts have consistently followed the Center for Disease Control ("CDC")
22  guidelines and considered obesity as weighing in favor of a sentence reduction, because obesity
23  places inmates at a significant risk of severe and life-threatening complications in the face of

---

[6] BMI measurements over 30 are classified as obese, which has been identified as a high-risk factor for complications related to COVID-19. Centers for Disease Control, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html) (last accessed Oct. 1, 2020).

COVID-19.  *See United States v. Aruda*, No. 14-cr-00577, 2020 WL 4043496, at *2 (D. Hawai'i July 17, 2020) (obesity ranks highest on list of many medical conditions as condition creating most risk); *see also United States v. Rice*, 12-cr-818, 2020 WL 3402274, at *2 (N.D. Cal. June 19, 2020) (compassionate release denied due to nature of underlying conviction); *United States v. Dorsey*, No. CR16-0138, 2020 WL 2562878, at *2 (W.D. Wash. May 19, 2020).  Here, the government even concedes defendant's obesity makes him "technically eligible" for a sentence modification for compassionate release purposes.  Opp'n at 8.

Applicable CDC Guidance cautions the circumstances in prison settings generally present "unique challenges for control of [COVID-19] transmission among incarcerated/detained persons, staff, and visitors," and advises that "[c]onsistent application of specific preparation, prevention, and management measures can help reduce the risk of transmission and severe disease from COVID-19."  CDC, Guidance for Correctional & Detention Facilities (July 22, 2020).[7]  The CDC identifies particularized strategies for preventing the spread of the virus: "reinforcing hygiene practices; intensifying cleaning and disinfection of the facility; regular symptom screening for new intakes, visitors, and staff. . . social distancing measures; as well as testing symptomatic and asymptomatic individuals. . ." *Id.*  As other courts have noted, "'[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others.'" *United States v. Gorai*, No. 2:18-cr-220, 2020 WL 1975372, at *2 (D. Nev. Apr. 24, 2020) (quoting *Esparza*, 2020 WL 1696084, at *2.

Here, defendant alleges the specific conditions in which he is housed at FCI Schuylkill prevent him from taking adequate precautions to prevent contracting COVID-19.  Specifically, he represents he cannot socially distance from his roommate, BOP is not testing inmates or staff, he has not been given adequate sanitation equipment or a suitable mask, and the facility is ignoring inmates with symptoms unless they have a fever.  Mot. at 3–4.  Additionally,

---

[7] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

defendant claims staff members routinely enter his housing block without masks. *Id.* at 4. The government does not present any evidence to the contrary, or even contest defendant's representations; rather it says at the time of writing it did not know of any cases at FCI Schuylkill. Opp'n at 8.

Specifically at FCI Schuylkill, as of October 1, 2020, BOP has issued 304 tests[8] to the inmate population of 1,030,[9] with one test currently outstanding. According to the data, there have been five positive tests in the inmate population, and there is currently one staff member with an active case of coronavirus. At the time of filing, July 6, 2020, defendant attested that FCI Schuylkill was not testing inmates, presumably including himself. Mot. ¶ 7. Any confirmed cases signal the possibility of more, either undetected or likely to occur in the future. Without comprehensive testing and contact tracing regimens, a fair assessment of the status at any given prison is difficult if not impossible to make. Some courts have concluded that "statistics about the number of infections already in BOP facilities are largely meaningless." *Esparza*, 2020 WL 1696084, at *2; *see also United States v. Haney*, No. 19-cr-541, 2020 WL 1821988, at *6 (S.D.N.Y. April 13, 2020); *United States v. Roundtree*, No. 1:12-cr-0308, 2020 WL 2610923, at *7 (N.D.N.Y. May 18, 2020) (considering specifically statistics generated by FCI Schuylkill to be unreliable because of BOP's inadequate testing regimen and physical nature of the facility as an "incubator[]"). Indeed, this court has previously noted apparent irregularities with BOP's coronavirus statistics at other facilities. *United States v. Pickard*, No. 2:11-cr-00449, 2020 WL 4227510, at *3 (E.D. Cal. July 23, 2020) (noting "precipitous decline" in active cases from day to day on BOP coronavirus dashboard). The single previously reported case, to the court, confirms COVID-19 is present at FCI Schuylkill, but does not necessarily represent the full scope of any spread, especially because by their own account, FCI Schuylkill has only tested approximately one-fifth of its inmate population since the pandemic began in March. This court notes an

---

[8] Specific Facility Information, https://www.bop.gov/coronavirus/ (accessed on October 1, 2020).

[9] FCY Schuylkill General Information, https://www.bop.gov/locations/institutions/sch/ (accessed on October 1, 2020).

apparent trend of the number of confirmed cases lagging behind the true scope of the pandemic. *See How U.S. Coronavirus Diagnoses are Lagging Behind the Outbreak*, N.Y. TIMES (April 2, 2020) (reporting on data collected by Centers for Disease Control and Prevention).[10]

In sum, defendant's health conditions, the presence of COVID-19 in the facility where he is housed make for "extraordinary and compelling reasons," warranting a sentence reduction.

C. Sentencing Guidelines

The Sentencing Guidelines provide "the [c]ourt should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and [] the [c]ourt should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *Gonzalez*, 2020 WL 1536155, at *3 (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A). U.S.S.G. § 1B1.13 advises the court to consider whether defendant is "a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

The government argues defendant's conviction offense of felon in possession of a firearm and his violation of terms of supervised release, as well as his prior firearms and narcotics offenses, make him a "danger to the community" and ineligible for release. Opp'n at 8–9. The government characterizes "danger to community" as broader than posing a physical danger, and asserts defendant's history demonstrates a "well-established criminal lifestyle from which Laborin refused to remove himself." Opp'n at 9. The government further argues defendant has lived a violent lifestyle, but it has not alleged or submitted evidence of any past crimes of violence. Opp'n at 8–9. Defendant's instant offense, felon in possession of a firearm, does not qualify defendant as a "danger to community" as a matter of law. *See United States v. Twine*, 344 F.3d 987, 988 (9th Cir. 2003) (holding felon in possession of firearm to not be crime of violence) (citing *United States v. Canon*, 993 F.2d 1439, 1441 (9th Cir. 1993); *see also Bradley*, 2020 WL 3802794, at *6–7 (felon in possession of firearm not violent offense, defendant not

---

[10] https://www.nytimes.com/interactive/2020/04/01/us/coronavirus-covid-19-symptoms-data.html.

1  danger to community despite previous violent offenses of "felony drug, theft and robbery
2  crimes").

3  Defendant points out that as of the time he filed his motion 21 months remained on
4  his 104-month custodial sentence, meaning he has served approximately 79 percent of that
5  sentence.[11]  Mot. at 1.  While the government argues granting defendant's motion would effect an
6  "abrupt departure from [defendant's] current sentence," Opp'n at 9 (citing *United States v.*
7  *Applewhite*, No. 08-cr-60037, 2020 WL 137452, at *2 (D. Or. January 13, 2020)), the court
8  disagrees.  *See United States v. Etzel*, 6:17-cr-00001, 2020 WL 2096423, at *4 (D. Oregon May 1,
9  2020) ("The effective [] sentence, over 70% of his total sentence, adequately expresses the
10 seriousness of the offense [possession of a firearm and possession of methamphetamine, deters
11 criminal conduct, and protects the public under § 3553(a)."); *see also Bradley*, 2020 WL 3802794,
12 at *7 (rejecting similar argument and finding defendant's service of "well more than half of his
13 original sentence" sufficient under new circumstances introduced by coronavirus).

14 Defendant's efforts at rehabilitation while incarcerated also weigh in favor of his
15 requested sentence reduction.  For example, he has completed at least 16 educational programs,
16 including "Alternatives to Violence" and "Purpose Driven Life," and worked towards receiving
17 his GED.  Mot. at 6, 11; *see Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of
18 post-sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that
19 Congress has expressly instructed district courts to consider at sentencing.").

20 Finally, the court has requested that its Probation Officer review defendant's
21 proposed post-release plan, to live with his family in Sacramento.  Mot. ¶ 12.  Probation has
22 approved the plan, noting it will improve the chances of defendant being successful during his
23 term of supervised release.  The court approves this release plan.

24 No § 3553(a) factors weigh against granting defendant's motion; rather they either
25 are not a bar or weigh in his favor.

---

[11] While defendant had served approximately 79 percent at the time of filing the instant motion, at the issuing of this order he has served approximately 82 percent of his sentence.

IV.     CONCLUSION

For the reasons set forth above, the court GRANTS defendant's motion for compassionate release, and defendant's post-release plan to live with his family in Sacramento, California, at the address approved by Probation, is approved.

The court modifies defendant's sentence of incarceration to time served, to be followed by the 36-month term of supervised release previously imposed.  A special condition of supervised release is added whereby defendant shall be subject to home confinement for up to 6 months as directed by the probation officer, with defendant responsible for the attendant costs of location monitoring.  *See United States v. Lee*, No. 19-cr-00419-SI-1, 2020 WL 2512415, at *2 (N.D. Cal. May 15, 2020) (imposing special condition of home confinement).  Defendant shall be restricted to his mother's residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities as pre-approved by the probation officer.

In addition to other court-imposed conditions of release, defendant's movement in the community shall be restricted as follows, with all activities subject to pre-approval by the probation officer: defendant shall be restricted to his residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities as pre-approved by the probation officer.  *Id.*

There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to allow for the making of appropriate travel arrangements and to ensure the defendant's safe release.  Defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel.  There shall be no delay in ensuring travel arrangements are made.  If more than fourteen days are needed to make appropriate travel arrangements and ensure defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

The court orders Mr. Laborin to self-isolate for fourteen days in his mother's home once he arrives there.  The government's request that Mr. Laborin quarantine within the custody

1  of the Bureau of Prisons is DENIED.  *See United States v. Scparta*, No. 18-578, 2020 WL
2  1910481, at *9 (S.D.N.Y. Apr. 20, 2020).

3  The government's request to seal Exhibit 2 to its opposition is GRANTED, as the
4  document contains sensitive medical records in which defendant has a compelling privacy
5  interest.  *See* ECF No. 80; *see also Johnsen v. Tambe*, No. 19-141, 2019 WL 4014256, at *2
6  (W.D. Wash. Aug. 26, 2019) (finding plaintiff's "privacy interest in his own medical records to be
7  a sufficiently compelling reason to seal the medical records themselves").  The Clerk is hereby
8  directed to file Exhibit 2 to the government's opposition on the docket under seal.

9  This order resolves ECF Nos. 76, 80.

10  IT IS SO ORDERED

11  DATED:  October 5, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE